IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY | § § § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO.  3:15-cv-2870 |
| PIONEER NATURAL RESOURCES USA, INC., CLEAN HARBORS EXPLORATION SERVICES, INC., CLEAN HARBORS, INC., CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., DESTINY DRILLING, INC., GEMINI INSURANCE COMPANY, KAY COFFIELD DOBBS, BRENT L. DOBBS, TRUSTEE OF THE BDK TRUST, AND DONNA JEAN COFFMAN | § § § § § § § § § § § § § § § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

Plaintiffs Zurich American Insurance Company ("ZAIC") and American Guarantee & Liability Insurance Company ("AGLIC") file this Original Complaint and respectfully show the Court as follows:

### I.    SUMMARY OF ACTION

1.     This action for declaratory judgment and breach of contract arises out of claims for damages allegedly arising from a fire in Montague County, Texas. On September 1, 2011, a track seismic-drilling machine caught fire which spread to

approximately 1200 acres including land owned by Kay Coffield Dobbs, the BDK Trust, and Donna Jean Coffman (collectively, the "Underlying Plaintiffs"). The Underlying Plaintiffs brought suit.

2.      ZAIC and AGLIC (collectively, "the Zurich Insurers") seek a declaration regarding the parties' rights and obligations, if any, under the following policies (collectively, "the Policies"):

a.  ZAIC Policy No. GLO 9681229-03, for the policy period November 1, 2010 to November 1, 2011, issued to Clean Harbors Exploration Services, Inc. and others ("Clean Harbors Primary Policy"). A copy of the Clean Harbors Primary Policy has been attached as Exhibit A.

b.  ZAIC Policy No. GLO 9482636-00, for the policy period April 1, 2011 to April 1, 2012, issued to Logan International Inc. insuring Destiny Drilling, Inc. and others ("Destiny Primary Policy"). A copy of the Destiny Primary Policy has been attached as Exhibit B.

c.  AGLIC Policy No. AUC 4275262-06, for the policy period November 1, 2010 to November 1, 2011, issued to Clean Harbors Environmental Services, Inc. and others ("Clean Harbors Excess Policy"). A copy of the Clean Harbors Excess Policy has been attached as Exhibit C.

d.  AGLIC Policy No. UMB 9482618 00, effective April 1, 2011 to April 1, 2012, issued to Logan International Inc. insuring Destiny Drilling, Inc. and others ("Destiny Excess Policy"). A copy of the Destiny Excess Policy has been attached as Exhibit D.

e. Gemini Insurance Company ("Gemini") Policy No. JGH2000223, effective June 15, 2011 to June 15, 2012, issued to Pioneer Natural Resources USA, Inc. ("Pioneer") ("Gemini Primary Policy"). A copy of the Gemini Primary Policy has been attached as Exhibit E.

f. Gemini Policy No. JUH200020, effective June 15, 2011 to June 15, 2012, issued to Pioneer ("Gemini Umbrella Policy"). A copy of the Gemini Umbrella Policy has been attached as Exhibit F.

3. The Zurich Insurers seek a declaration that they are not obligated to defend or indemnify Pioneer under the Destiny Primary Policy, the Destiny Excess Policy, the Clean Harbors Primary Policy or the Clean Harbors Excess Policy (collectively, "the Zurich Policies") in connection with the lawsuit styled *Kay Coffield Dobbs, Brent L. Dobbs as Trustee of the BDK Family Trust and Donna Jean Coffman v. Pioneer Natural Resources USA, Inc., et al*; Cause No. 2013-0194-CV; 97th District Court of Montague County, Texas ("the Underlying Lawsuit") and claims asserted by Underlying Plaintiffs. Alternatively, the Zurich Insurers seek a declaration limiting any indemnity obligations to Pioneer.

4. The Zurich Insurers also seek a declaration that Gemini is required to defend Pioneer in the Underlying Lawsuit and further to pay, by its policy terms, the first $25 million in indemnity coverage.

5. ZAIC further seeks recovery of defense costs that should have been paid by Gemini in defending Pioneer in the Underlying Lawsuit.

## II.   PARTIES

6.    Plaintiff Zurich American Insurance Company ("ZAIC") is a New York corporation with a statutory home office located in New York and its principal place of business in Illinois.

7.    Plaintiff American Guarantee & Liability Insurance Company ("AGLIC") is a New York corporation with a statutory home office located in New York and its principal place of business located in Illinois.

8.    Defendant Pioneer Natural Resources USA, Inc. ("Pioneer") is a Delaware corporation with its principal place of business in Dallas, Texas.

9.    Defendant Clean Harbors Exploration Services, Inc. is a Nevada corporation with its principal place of business in Pennsylvania. Clean Harbors Exploration Services, Inc. is a defendant in the Underlying Lawsuit stemming from its business operations in Montague County, Texas.

10.    Defendant Clean Harbors, Inc. is a Massachusetts corporation with its principal place of business in Massachusetts. Clean Harbors, Inc. is a defendant in the Underlying Lawsuit stemming from its business operations in Montague County, Texas.

11.    Defendant Clean Harbors Environmental Services, Inc. is a Massachusetts corporation with its principal place of business in Massachusetts. Clean Harbors Environmental Services, Inc. is a defendant in the Underlying Lawsuit stemming from its business operations in Montague County, Texas.

12.     Defendant Destiny Drilling, Inc. ("Destiny") is a Texas corporation with its principal place of business in Houston, Texas.

13.     Gemini Insurance Company is a Delaware corporation with its principal place of business in Connecticut. Gemini has transacted business in Texas, as evidenced by delivery in Texas of the Pioneer Policies.

14.     Defendant Kay Coffield Dobbs ("Ms. Dobbs") resides at 2321 Huntersridge Drive, Irving, Dallas County, Texas 75063, and upon information and belief, is a Texas citizen.

15.     Defendant Brent L. Dobbs, Trustee of the BDK Trust, resides at 4950 North O'Connor Road, Irving, Dallas County, Texas 75062, and upon information and belief, is a Texas citizen, and further upon information and belief, the BDK Trust is organized under the laws of Texas with its principal place of business at 4950 North O'Connor Road, Irving, Dallas County, Texas.

16.     Upon information and belief, Defendant Donna Jean Coffman ("Ms. Coffman") resides at 410 East Wilbarger, Bowie, Montague County, Texas 76230 and is a Texas citizen.

### III.   JURISDICTION AND VENUE

17.     Jurisdiction is proper in accordance with 28 U.S.C. §1332 in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because some of the Defendants reside in the Northern District of Texas and a substantial part of the

events or omissions giving rise to the underlying claim occurred in the Northern District of Texas.

### IV.   UNDERLYING ACTION

19.     The Underlying Plaintiffs sued Pioneer and other defendants in the Underlying Lawsuit. *See* Exhibit G hereto, Plaintiffs' Original Petition; Exhibit H hereto, Plaintiffs' First Amended Petition; Exhibit I hereto, Plaintiffs' Second Amended Petition; Exhibit J, Plaintiffs' Third Amended Petition; Exhibit K, Plaintiffs' Fourth Amended Petition.[1]

20.     The Underlying Plaintiffs allege, among other things, that:

    a.   The Underlying Plaintiffs own land damaged by the September 1, 2011 fire.

    b.   The fire occurred during a seismic survey related to the exploration for oil and gas. The survey operations included using a mobile track drill, drilling holes in the ground, and placing explosives in the holes.

    c.   The track drill caught fire during operations on September 1, 2011, and the resulting fire spread to more than 1200 acres.

    d.   As to Ms. Dobbs and the BDK Trust, Pioneer breached a mineral lease and a seismic permit in relation to the fire.

21.     Pioneer tendered a claim to the Zurich Insurers for defense and indemnity as an additional insured under the Zurich Policies.

---

[1] The Fourth Amended Petition includes amended allegations only for Kay Coffield Dobbs and Brent L. Dobbs, as trustee of the BDK Family Trust. Underlying plaintiff Donna Jean Coffman's allegations remain in the Third Amended Petition.

22.     Upon information and belief, Pioneer also tendered a claim to Gemini for defense and indemnity under the Gemini Policies.

23.     ZAIC defended Pioneer in the Underlying Lawsuit under the Clean Harbors Primary Policy subject to a reservation of rights until approximately June 11, 2015, after which ZAIC defended Pioneer under the Destiny Primary Policy subject to a reservation of rights.

24.     ZAIC currently is defending Pioneer under the Destiny Primary Policy in the Underlying Lawsuit, subject to a reservation of rights.

## V.     THE POLICIES

25.     The Clean Harbors Primary Policy and Clean Harbors Excess Policy (collectively, the "Clean Harbors Policies") were delivered to Clean Harbors Environmental Services, Inc. at 42 Longwater Drive, Norwell, Massachusetts 02061.

26.     The Destiny Primary Policy and the Destiny Excess Policy (collectively, the "Destiny Policies") were delivered to Destiny Drilling Inc.'s parent company, Logan International, Inc. at 10603 West Sam Parkway North, Houston, Texas 77064.

27.     The Gemini Primary Policy and the Gemini Umbrella Policy (collectively, the "Gemini Policies") were delivered to Pioneer at 5202 N. O'Connor Boulevard, Irving, Texas 75039.

## VI.     DECLARATORY JUDGMENT COUNTS

28.     The Zurich Insurers seek a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 to resolve disputed questions of insurance coverage regarding the Policies.

29.     The Zurich Insurers are interested parties under the Declaratory Judgment Act.

30.     An actual controversy exists between the Zurich Insurers and Defendants concerning the Zurich Insurers' legal rights and obligations under the Policies.

### COUNT I - THE CLEAN HARBORS POLICIES DO NOT PROVIDE COVERAGE TO PIONEER

31.     The Zurich Insurers adopt and incorporate paragraphs 1 to 30 above.

32.     Pioneer is not an additional insured under either the Clean Harbors Primary Policy or the Clean Harbors Excess Policy.

33.     The Clean Harbors Primary Policy provides for additional insured coverage to "any person or organization who [Clean Harbors is] required to add as an additional insured on this policy under a written contract or written agreement." The Clean Harbors Primary Policy includes form U-GL-1175-B CW (3/2007), entitled "Additional Insured—Automatic—Owners, Lessees Or Contractors," which provides in relevant part:

> **A. Section II – Who Is An Insured** is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.
>
> **B.** The insurance provided to the additional insured person or organization applies only to 'bodily injury', 'property damage' or 'personal and advertising injury' covered under SECTION I – Coverage A – Bodily Injury and Property Damage Liability and Section I – Coverage B – Personal and Advertising Injury Liability, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or part, by:
>
> > 1.   Your acts or omissions; or

2.  The acts or omissions of those acting on your behalf; and resulting directly from:

   a.   Your ongoing operations performed for the additional insured, which is the subject of the written contract or written agreement; or

   b.   'Your work' completed as included in the 'products-completed operations hazard', performed for the additional insured, which is the subject of the written contract or written agreement.

*See* Exh. A at 000050.

34.   The Clean Harbors Excess Policy is follow form and limited to the same scope of coverage in relation to additional insureds as the Clean Harbors Primary Policy. *See* Exh. C, Clean Harbors Excess Policy at 000262.[2]

35.   On October 25, 2010, Pioneer ("Company") and Destiny ("Contractor") entered into a Master Service/Sales Agreement ("MSSA") providing in relevant part:

12)   <u>Maintenance of Insurance</u>. Contractor shall secure, and maintain at all times while this Agreement is in force, at Contractor's sole cost and expense, insurance coverages of the nature and with minimum limits equal to or in excess of the requirements set forth on Exhibit "A", attached hereto and incorporated herein. …

All insurance coverage carried by Contractor, to the extent allowed by law, shall name Company and its affiliates, parent and subsidiaries (both direct and remote), as "additional insureds" insofar as work performed under this Agreement is concerned, so that said insurance, with regard to the types of coverages required hereby, be made to extend to and protect Company to the same extent Contractor is covered relative to transactions governed by

---

[2] "With respect to **Coverage A**, this policy includes: …The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and . . . [t]he terms and conditions that apply to Coverage A of this policy." In the definition of "insured," Coverage A under the policies include "[a]ny person or organization qualifying as an additional insured in underlying insurance but only to the same extent that such person or organization is an additional insured under such underlying insurance."

this Agreement.[3]

36.     On June 13, 2011, Pioneer and Destiny entered into the Sorocco & Panther Creek 3D Drilling Program contract ("Work Order"), which is governed by the terms of the MSSA. *See* Exhibit N, Work Order. The Work Order included the scope of work performed on September 1, 2011 which is the subject of the Underlying Lawsuit.

37.     On July 29, 2011, Destiny assigned most of its contracts to Clean Harbors in an asset purchase.

38.     Destiny did not assign the MSSA or Work Order to Clean Harbors.

39.     Clean Harbors is not a party to the MSSA or Work Order.

40.     No written contract or written agreement exists requiring Clean Harbors to add Pioneer as an additional insured under the Clean Harbors Primary Policy or the Clean Harbors Excess Policy in relation to the Underlying Lawsuit or claims made by the Underlying Plaintiffs.

41.     Accordingly, the Zurich Insurers seek a judicial declaration that the Clean Harbors Primary Policy and the Clean Harbors Excess Policy do not contractually obligate ZAIC or AGLIC to defend or indemnify Pioneer in the Underlying Lawsuit.

### COUNT II – THE DESTINY POLICIES DO NOT PROVIDE COVERAGE TO PIONEER

42.     The Zurich Insurers adopt and incorporate paragraphs 1 to 41 above.

43.     Pioneer is not an additional insured under either the Destiny Primary Policy or the Destiny Excess Policy.

---

[3] A copy of the MSSA is attached as Exhibit K.

44.    The Destiny Primary Policy includes an additional-insured endorsement, entitled "Broad Form Additional Insured Coverage—Owners, Lessees Or Contractors – Scheduled Person or Organization," form U-GL-1321-B CW (11/07), providing in relevant part:

| Name of Additional Insured Person(s) Or Organizations: | Location And Description Of Covered Operations |
|---|---|
| BLANKET AS REQUIRED BY WRITTEN CONTRACT | |

A. **Section II – Who Is An Insured** is amended to include as an insured the persons or organizations shown in the SCHEDULE above.

B. The insurance provided to the additional insured applies only to 'bodily injury', 'property damage' or 'personal and advertising injury' covered under Section I – Coverage A, Bodily Injury and Property Damage Liability and Section I – Coverage B, Personal And Advertising Injury Liability, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused:

1. In whole or part, by your acts or omissions or the acts or omissions of those acting on your behalf; or

2. Solely by acts or omissions of the additional insured, if coverage for sole acts or omissions of the additional insured is required by written contract or written agreement,

and resulting from:

a.    Your ongoing operations; or

b.    'Your work' completed as included in the 'products-completed operations hazard',

performed for the additional insured at the location designated and described in the Schedule.

*See* Exh. B at 000196.

45.     The Destiny Excess Policy is follow form and is limited to the same scope of coverage in relation to additional insureds as the Destiny Primary Policy. *See* Exh. D, Destiny Excess Policy at 000309.[4]

46.     The MSSA does not require additional insured coverage for the additional insured's sole negligence. Accordingly, additional insured coverage requires that the property damage that is the subject of the Underlying Lawsuit be caused, in whole or part, by Destiny's acts or omissions or the acts or omissions of those acting on Destiny's behalf.

47.     The petitions prior to the Fourth Amended Petition include no allegations concerning Destiny whatsoever. Accordingly, the Zurich Insurers seek a judicial declaration that it had no duty to defend Pioneer in the Underlying Lawsuit under the Destiny Primary Policy, based on the allegations in the Original, First Amended, Second Amended, and Third Amended Petitions.

48.     The Fourth Amended Petition includes allegations of wrong-doing against Clean Harbors, and then references Destiny as follows:

> 7. … Clean Harbors presently includes Destiny Drilling, Inc. ("Destiny Drilling"), whose assets (including the Master Service/Sales Agreement for the seismic work on the Dobbs Family's property) were purchased as part of the June 30, 2011 asset purchase agreement between (among others) Destiny Drilling and Clean Harbors. As a result of the Asset Purchase Agreement, Clean Harbors assumed the responsibility and liability, as well as control

---

[4] "With respect to **Coverage A**, this policy includes: …The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and . . . [t]he terms and conditions that apply to Coverage A of this policy." In the definition of "insured," Coverage A under the policies include "[a]ny person or organization qualifying as an additional insured in underlying insurance but only to the same extent that such person or organization is an additional insured under such underlying insurance."

of the work under, the Master Services Agreement, subject to approval by Pioneer.

\*\*\*

12. … Destiny Drilling, one of the companies hired and supervised by Pioneer and its agents, sold many of its assets, including the Master Service/Sales Agreement under which Destiny Drilling's seismic work on the Property was undertaken, to Clean Harbors. As a result, Clean Harbors took over Destiny Drilling's work and contractual obligations and was responsible for them in all respects.

*See* Exh. K at ¶¶ 7 & 12.

49.     The Fourth Amended Petition does not contain sufficient allegations to trigger coverage.

50.     Accordingly, the Zurich Insurers seek a judicial declaration that the Destiny Primary Policy and the Destiny Excess Policy do not contractually obligate the Zurich Insurers to defend or indemnify Pioneer in the Underlying Lawsuit.

## COUNT III – ALTERNATIVELY, the GEMINI POLICIES are PRIMARY to any applicable ZURICH POLICY

51.     The Zurich Insurers adopt and incorporate paragraphs 1 to 50 above.

52.     Pioneer is a named insured on the Gemini Policies.

53.     Under the Gemini Policies, Gemini has a duty to defend and duty to indemnify Pioneer in the Underlying Lawsuit.

54.     Because there is no coverage under the Zurich Policies, Gemini has the obligation to defend and indemnify Pioneer in the Underlying Lawsuit.

55.     Alternatively, in the unlikely event that there is coverage under any of the Zurich Policies as well as the Gemini Policies, the Gemini Policies are primary to the Zurich Policies.

56.     The Zurich Insurers seek a judicial declaration that the Gemini Policies are primary to the Zurich Policies.

**COUNT IV - THE CONTRACTUAL LIABILITY EXCLUSION IN ALL OF THE ZURICH POLICIES BARS COVERAGE FOR CONTRACT DAMAGES**

57.     Plaintiffs repeat and re-allege Paragraphs 1 through 56 as if fully set forth herein.

58.     Alternatively or additionally, as may be necessary, the Zurich insurers allege as follows:

59.     The Contractual Liability exclusions limit indemnity obligations to Pioneer under the Policies.

60.     The Clean Harbors Primary Policy and the Destiny Primary Policy provide:

**2. Exclusions**

This insurance does not apply to:

\*\*\*

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. …

*See* Exh. A at 000030; Exh. B at 000178.

61.     The Clean Harbors Primary Policy and the Destiny Primary Policy define

"insured contract" as:

> **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an 'insured contract.'

> ***

> **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*See* Exh. A at 000041; Exh. B at 000189.

62.     Further, the Clean Harbors Primary Policy's additional insured

endorsement provides:

> **C.**     However, regardless of the provisions of paragraphs A. and B. above:
>
> 1. We will not extend any insurance coverage to any additional insured person or organization:
>
>> a. That is not provided to you in this policy; or
>>
>> b. That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement.

*See* Exh. A at 000050.

64.     The Destiny Primary Policy similarly provides:

> **C.**     However, regardless of the provisions of paragraphs A. and B. above:
>
> 1. We will not extend any insurance coverage to the additional insured person or organization:
>
>> a. That is not provided to you in this policy; or

> b. That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement . . ..

*See* Exh. B at 000196–97.

63.     The Clean Harbors Excess Policy and the Destiny Excess Policy follow form and include the same limitations and exclusions as the primary policies. *See* Exh. C at 000262; Exh. D at 000309.

64.     The mineral lease and seismic permit are not "insured contracts."

65.     In the unlikely event that the mineral lease or seismic permit are "insured contracts" as to Pioneer, they would not be as to the named insureds. As the scope of coverage to Pioneer as an additional insured is limited to the same extent as insurance provided to the named insured, there is no coverage for Pioneer's assumption of liability in the mineral lease or the seismic permit.

66.     The Fourth Amended Petition specifically includes breach of contract allegations against Pioneer regarding the fire damage, based on a mineral lease and a seismic permit.

67.     To the degree Pioneer's liability may be limited to contractual damages in the Underlying Lawsuit, and to the degree Pioneer may be liable for a higher measure of damages under a contract claim than it would under a non-contractual cause of action, these exclusions and limitations apply and there is no coverage for such contractual liabilities.

68.     The Zurich Insurers seek a judicial declaration that this exclusion applies and no duty to indemnify Pioneer exists in relation to contract damages stemming from the Underlying Lawsuit, under any of the policies.

### COUNT V - THE EXPECTED OR INTENDED EXCLUSION IN ALL OF THE POLICIES BARS OR LIMITS COVERAGE

69.     Plaintiffs repeat and re-allege Paragraphs 1 through 68 as if fully set forth herein.

70.     Alternatively or additionally, as may be necessary, the Zurich insurers alleges as follows:

71.     The Destiny Primary Policy and the Clean Harbors Primary Policy provide:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*See* Exh. A at 000030; Exh. B at 000178.

72.      The excess policies follow form and include the same limitations and exclusions as are in the primary policies.

73.     The Underlying Complaints allege that Pioneer knew that the drilling equipment would overheat and that fires had occurred in the past.

74.     The Zurich Insurers seek a judicial declaration that this exclusion applies to bar or limit any indemnity obligation to Pioneer in relation to the Underlying Lawsuit, under any of the Zurich Policies.

### COUNT VI - NONE OF THE POLICIES PROVIDE COVERAGE FOR PUNITIVE DAMAGES

75.     Plaintiffs repeat and re-allege Paragraphs 1 through 74 as if fully set forth herein.

76.     Alternatively or additionally, as may be necessary, the Zurich insurers alleges as follows:

77.     The Third and Fourth Amended Petitions seek punitive or exemplary damages.

78.     The Zurich Insurers seeks a declaration, that by operation of Texas law, the Policies do not provide indemnity coverage for punitive or exemplary damages.

### COUNT VII - THE MSSA CONTRACTUALLY REDUCES THE POLICIES' LIMITS TO $1 MILLION FOR THE PRIMARY POLICIES AND $5 MILLION FOR THE EXCESS POLICIES

79.     Plaintiffs repeat and re-allege Paragraphs 1 through 78 as if fully set forth herein.

80.     Alternatively or additionally, as may be necessary, the Zurich insurers alleges as follows:

81.     The Clean Harbors Primary Policy's additional insured endorsement reduces the Policy's Limits of Insurance, as follows:

> **C.**     However, regardless of the provisions of paragraphs A. and B. above:
>
> ***

    2.  We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

        a.  The Limits of Insurance provided to you in this policy; or

        b.  The Limits of Insurance you are required to provide in the written contract or written agreement.

*See* Exh. A at 000050. The Destiny Primary Policy's additional insured endorsement similarly provides in relevant part:

    **C.**  However, regardless of the provisions of paragraphs A. and B. above:

    ***

    2.  We will not provide Limits of Insurance to the additional insured person or organization that exceed the lower of:

        a.  The Limits of Insurance provided to you in this policy; or

        b.  The Limits of Insurance you are required to provide in the written contract or written agreement.

*See* Exh. B at 000197.

82.    The excess policies follow form and include the same limitations and exclusions as the primary policies.

83.    The Excess Policies provide in relevant part:

13.  **Other Insurance**

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply:

a.  If the **other insurance** is written to be excess of this policy; or

b.  With respect to **Coverage A** only [Excess Follow Form Liability Insurance], if the **named insured** has agreed in a written contract to carry insurance to apply prior to and be non-

contributory with that of another person or organization's insurance, but only as respects damages arising out of insured operations or work on behalf of the **named insured** performed under such written contract. The limits available to the other person or organization will be the lesser of the policy limits or the minimum limits required by such written contract. In that case**, other insurance** of that person or organization will apply as excess and not contribute prior to the insurance afforded by this policy.

*See* Exh. C at 000278; Exh. D at 000325.

84.     The MSSA provides in relevant part:

EXHIBIT A TO MASTER SERVICE/SALES AGREEMENT

\*\*\*

…Contractor shall, during the progress of the work, carry, at its own expense, on forms and in reliable insurance companies authorized to do business in the state or area in which the work is to be performed hereunder, the following minimum insurance coverages:

\*\*\*

B.     Commercial General Liability Insurance, with limits of liability of not less than the following:

$1,000,000 general aggregate
$1,000,000 each occurrence, Bodily Injury and/or Property Damage Combined Single Limit

\*\*\*

F.     Excess Liability Insurance, ~~Drilling Contractors Only~~,[5] with limits of liability of not less than the following:

Limits of Liability - $5,000,000 Occurrence/Aggregate for Bodily Injury and Property Damage in excess of the

---

[5] These words have been crossed out in the original with a single set of initials next to it. Plaintiffs are not clear on whether this phrase was omitted by both parties or only at the request of one, nor whether the phrase remains operative. Plaintiffs reserve all claims and defenses in relation to these words.

coverage outlined in Paragraphs "A", "B", and "C".

*See* Exhibit L, MSSA.

85.     The Zurich Insurers seek a judicial declaration that, pursuant to the MSSA's terms and the Policies' express terms, the available limits of the Policies are $1 million for the Primary Policies and $5 million for the Excess Policies, subject to any deductibles.[6]

### COUNT VIII - THE INSURING AGREEMENTS IN ALL OF THE ZURICH POLICIES LIMIT INDEMNITY COVERAGE FOR FIRE DAMAGE TO **$100,000**

86.     Plaintiffs repeat and re-allege Paragraphs 1 through 85 as if fully set forth herein.

87.     Alternatively or additionally, as may be necessary, the Zurich insurers alleges as follows:

88.     The Clean Harbors Primary Policy and the Destiny Primary Policy provide in relevant part:

> 6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

89.     The "Damage To Premises Rented To You Limit" is $100,000.

90.     Pioneer occupied the Dobbs property with Mrs. Dobbs' permission on September 1, 2011.

---

[6] The Clean Harbors Primary Policy has a $500,000.00 deductible which must be paid by Clean Harbors directly. *See* Exh. A at 000062–63. The Destiny Policy has a $25,000.00 deductible which will be reimbursed to ZAIC by Logan International, Inc. *See* Exh. B at 000198–99. The deductibles have not been disputed issues as of the filing of this complaint. However, if the parties dispute the application or handling of these deductibles, ZAIC may move to amend this complaint.

91.     The Zurich Insurers seek a declaration that the Damage to Premises Rented to You Limit applies and limits indemnity coverage under the Primary Policies to $100,000, subject to any deductibles.

### COUNT IX – THE SETTLEMENT AGREEMENT PRECLUDES PIONEER FROM RECOVERY UNDER ALL OF THE ZURICH POLICIES

92.     Plaintiffs repeat and re-allege Paragraphs 1 through 91 as if fully set forth herein.

93.     On August 29, 2012, Pioneer executed a settlement agreement and release, releasing all claims against Clean Harbors, ZAIC, and their respective affiliates (including AGLIC). A copy of the Settlement Agreement has been attached as Exhibit M.

94.     The Zurich Insurers seek a judicial declaration that the Settlement Agreement fully releases and/or limits any obligation to Pioneer.

### COUNT X – ZURICH IS ENTITLED TO RECOVER DEFENSE COSTS FROM GEMINI

95.     Plaintiffs repeat and re-allege Paragraphs 1 through 89 as if fully set forth herein.

96.     Zurich is subrogated through Pioneer for defense costs paid by Zurich in relation to the Underlying Lawsuit.

97.     There is no defense triggered under the Zurich Policies by one or more of the petitions filed in the Underlying Lawsuit.

98.     There is a defense triggered under the Gemini Policies by one or more of the petitions filed in the Underlying Lawsuit.

99.    Gemini breached its policy with Pioneer by failing to defend Pioneer in the Underlying Lawsuit.

100.    Zurich, as subrogated through Pioneer, seeks defense costs that it paid and Gemini did not. Alternatively, if both Gemini and Zurich owed a defense, Zurich seeks reimbursement of Gemini's pro rata share of such defense costs.

## VI.    PRAYER

For these reasons, the Zurich Insurers demand judgment against Defendants for declaratory relief as set forth above; for recovery of defense costs, pre- and post-judgment interest, court costs, and attorney fees against Gemini; and for such other and further relief to which they are justly entitled.

Respectfully submitted,

/s/ Blair Dancy
Blair Dancy
State Bar No. 24001235
Rebecca DiMasi
State Bar No. 24007115
Buchanan DiMasi Dancy & Grabouski LLP
9600 Great Hills Trail, Suite 300 West
Austin, Texas 78759
Telephone:    512-225-2800
Facsimile:    512-225-2801
Email:          bdancy@bddglaw.com

ATTORNEYS FOR PLAINTIFFS ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY